IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **In re:** | ) |
| | ) |
| **Meadowbrook Farms Cooperative,** | ) |
| | ) |
| Debtor. | ) |
| | ) |
| **GREAT LAKES PORK, INC.,** | ) |
| **JOHNSON-PATE PORK, INC., and** | ) |
| **LEHMANN BROTHERS FARMS, LLC,** | ) |
| | ) |
| Appellants, | ) |
| | ) |
| vs. | )   CIVIL NO. 10-731-GPM |
| | ) |
| **THE CIT GROUP/BUSINESS CREDIT,** | ) |
| **INC.,** | ) |
| | ) |
| Appellee. | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This bankruptcy appeal came before the Court for oral argument on February 28, 2011, and involves issues ancillary to the merits of an adversary proceeding decided by separate order on this same date in civil case number 10-623-GPM. After oral argument, the parties supplemented the record as ordered by this Court. Having fully considered all the papers on file and the arguments presented, the Court rules as follows.

**Factual Background**

The facts underlying the adversary proceeding are summarized here to provide context for the ancillary dispute currently before the Court. They are set forth in greater detail in the order on

the merits of the adversary dispute issued in civil case number 10-623-GPM.

In March 2009, Meadowbrook Farms Cooperative (MFC or the Debtor) filed a petition for Chapter 7 relief in the United States Bankruptcy Court for the Southern District of Illinois. The Debtor was an agricultural cooperative, or packer, that purchased hogs for slaughtering and processing. It packed and sold pork and pork products subject to the Packers and Stockyard Act of 1921 (PSA), 7 U.S.C. §§ 181 *et seq*.[1] Laura K. Grandy was appointed Bankruptcy Trustee for the Debtor and later was succeeded by Dana Frazier. In June 2009, the Trustee filed a complaint to determine the validity of claims to a lockbox fund held by the Trustee. As of February 26, 2010, the fund was valued at $2,278,745. The parties stipulated that the entirety of the fund was derived from accounts receivable and proceeds from the sale of livestock inventory and meat and meat food products derived from livestock purchased by the Debtor from certain livestock producers.

Appellee CIT Group/Business Credit, Inc. (CIT) is an undisputed secured creditor of the Debtor pursuant to a November 16, 2007, financing agreement. In July 2009, CIT answered the Trustee's complaint, filed a counterclaim against the Trustee asserting a first priority security interest in the funds held by the Trustee, and filed a crossclaim for equitable estoppel against other

---

[1] The statute provides, in part: **(b) livestock, inventories, receivables and proceeds held by packer in trust for benefit of unpaid cash sellers; time limitations; exempt packers; effect of dishonored instrument; preservation of trust benefits by seller** All livestock purchased by a packer in cash sales … shall be held by such packer in trust for the benefit of all unpaid cash sellers of such livestock until full payment has been received by such unpaid sellers … *Provided*, That the unpaid seller shall lose the benefit of such trust if, in the event that a payment instrument has not been received, within thirty days of the final date for making a payment under section 228b of this title, or within fifteen business days after the seller has received notice that the payment instrument promptly presented for payment has been dishonored, the seller has not preserved his trust under this subsection. The trust shall be preserved by giving written notice to the packer and by filing such notice with the Secretary. … **(c) Definition of Cash Sale** For the purpose of this section, a cash sale means a sale in which the seller does not expressly extend credit to the buyer. 7 U.S.C. § 196.

parties claiming an interest in the funds.

Great Lakes Pork, Inc., Johnson-Pate Pork, Inc., and Lehmann Brothers Farms, LLC (PSA Claimants) are livestock producers that sold hogs to the Debtor. PSA Claimants also answered the complaint, filed a counterclaim against the Trustee seeking funds protected under the PSA, and a crossclaim against CIT seeking any funds protected by the PSA that had been paid over to CIT. The issue presented by the adversary proceeding was whether sales made by PSA Claimants to the Debtor after October 2008 are subject to the trust provisions of the PSA.

Following a trial, the Bankruptcy Court found, as a matter of fact, that beginning on or about October 1, 2008, PSA Claimants began delivering additional hogs to the Debtor on cash terms with no waiver and full retention of the producer trust protections under the PSA. The Bankruptcy Court also found, as a matter of fact, that PSA Claimants were not paid for a total of 16,155 hogs valued at $1,815,477.51 that were delivered to the Debtor between December 11, 2008, and January 29, 2009.[2] The Bankruptcy Court concluded that the additional hog sales are to be treated as cash sales and, as such, PSA Claimants are entitled to first priority interest in the lockbox funds held by the Trustee under the PSA's trust protections and the applicable federal regulations.[3] CIT separately appealed the decision, and by separate order entered today in civil case number 10-623-GPM, this Court affirms the Bankruptcy Court's decision on the merits.

After deciding in favor of PSA Claimants on the merits, the Bankruptcy Court denied PSA

---

[2] Great Lakes Pork, Inc. (Great Lakes) sold a total of 11, 733 additional cash hogs to the Debtor, valued at $1,320,757.72; Johnson-Pate Pork, Inc. (Johnson-Pate) sold a total of 2,106 additional hogs to the Debtor, valued at $246,302.83; Lehmann Brothers Farms, LLC (Lehmann) sold a total of 2,316 additional cash hogs to the Debtor, valued at $248,416.96.

[3] The Bankruptcy Court held that Great Lakes is entitled to a first priority share in the amount of $1,320,757.72, Johnson-Pate is entitled to a first priority share in the amount of $246,302.83, and Lehmann is entitled to a first priority share in the amount of $248,416.96.

Claimants' motion for interest and attorneys' fees. Thereafter, PSA Claimants submitted their bill of costs, which the Bankruptcy Court denied. PSA Claimants filed this appeal, seeking pre- and post-judgment interest on any funds entitled to PSA trust protection and attorneys' fees. The Bankruptcy Court also denied an application for compensation and reimbursement filed by the Trustee, finding that the Trustee essentially worked on behalf of CIT and, therefore, the Trustee's services did not benefit the Debtor's bankruptcy estate. The Trustee did not appeal that ruling and does not take a position on either bankruptcy appeal filed in this Court.

## ANALYSIS

Pursuant to 28 U.S.C. § 158(a), the federal district courts have mandatory exclusive jurisdiction over appeals from final judgments, orders, and decrees of bankruptcy judges. The district court may affirm, modify, or reverse the bankruptcy judge's order, or remand with instructions for further proceedings. FED. R. BANKR. P. 8013. District Courts, like the Circuit Courts of Appeals, "review a bankruptcy court's determinations of law de novo and findings of fact for clear error." *Wiese v. Community Bank of Cent. Wis.,* 552 F.3d 584, 588 (7th Cir.2009); FED. R. BANKR. P. 8013.

In denying interest and fees, the Bankruptcy Court relied upon the absence of an express provision in the PSA for such awards. It is true that when the PSA was enacted, Congress did not explicitly provide for attorneys' fees. But the PSA does provide that livestock proceeds will be held in trust for the benefit of cash sellers "until full payment has been received by such unpaid sellers." 7 U.S.C. § 196. In this case, full payment has not been received by PSA Claimants for the hogs they sold to the Debtor under revised agreements executed in 2008 (Cash UMAs).

The Bankruptcy Court erred as a matter of law by failing to look to the actual agreements upon which this dispute is based. The Cash UMAs, under which the disputed sales were made,

specifically address the issues of attorneys' fees and pre-judgment interest. Paragraph 14(e) of the Cash UMAs states that "the prevailing party shall be entitled to reasonable attorneys fees." Exhibit A of the agreement states:

> In addition to the payments above … MFC shall pay to Member interest on any amounts due as a result of delivery hereunder the prime rate as published in the Wall Street Journal on the first day of the quarter in which the delivery is made. Said interest shall begin on the fourth (4th) day after delivery and continue until full payment is made.

(*See* Doc. 18). Since PSA Claimants prevailed in the dispute regarding sales made under the revised agreements and they have not yet been paid for those sales, PSA Claimants are entitled to reasonable attorneys' fees and pre-judgment interest to be paid from the trust account.

The fact that CIT is not a party to those agreements is of no consequence. Any money that is paid to PSA Claimants will not be paid by CIT; rather, it will come from the lockbox account held by the Trustee. While the remainder of that account may ultimately be distributed to CIT and other creditors of the Debtor, any reduction in the account is not relevant to what rightfully belongs to PSA Claimants.

The Bankruptcy Court also denied post-judgment interest. Procedural Form B 261C of the Official and Procedural Bankruptcy Forms for the Federal Rules of Bankruptcy Procedure, which contains a model judgment in an adversary proceeding, contemplates both pre- and post-judgment interest. Federal Rule of Bankruptcy Procedure 7058 provides that Federal Rule of Civil Procedure 58 "applies in adversary proceedings." Judgments entered in civil proceedings under Federal Rule of Civil Procedure 58 are presumed to include post-judgment interest in accordance with 28 U.S.C. 1961. *See generally* Forms 70-71, Appendix of Forms for the Federal Rules of Civil Procedure. This Court finds no reason to deny post-judgment interest in this adversary proceeding, and the Bankruptcy Court erred as a matter of law in doing so.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision to deny attorneys' fees and pre- and post-judgment interest is **REVERSED**. This matter is **REMANDED** to the Bankruptcy Court for a determination of attorneys' fees and pre- and post-judgment interest consistent with this Order. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 06/09/11

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge